IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES VILLARE and SUZANNE VILLARE, Plaintiffs, v. GEICO CASUALTY COMPANY, Defendants. | CIVIL ACTION NO. 14-2288 |

MEMORANDUM RE: PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Baylson, J.                                                                                                   March 23, 2015

I.      Introduction

Plaintiffs James and Suzanne Villare sought to recover from their auto insurance company, Defendant Geico Casualty Company, after Mr. Villare was injured in a collision with an underinsured motorist. Following a settlement conference with Magistrate Judge Strawbridge, the parties agreed to settle for $100,000. The terms of the settlement, as memorialized in a February 12, 2015 letter from Defendant's counsel, included Plaintiffs' agreement "to satisfy any and all liens being asserted in this matter with these settlement funds." However, upon reading a Release and Trust Agreement drafted by Geico, Mr. Villare was unable to sign the Release and Trust Agreement in its entirety because it included an inaccurate provision attesting that he is not within 30 months of becoming eligible for Medicare. After striking the inaccurate sentence, the Villares signed the Release and Trust Agreement, including all other provisions requested by Geico. The parties now dispute whether the Villares have fully complied with the terms of the settlement agreement and are entitled to disbursement of the settlement funds.

1

## II. Jurisdiction

In this diversity case, the Court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). The parties reported that the case had settled and it was dismissed with prejudice under Local Rule 41.1(b) on February 11, 2015 (ECF 19). The order of dismissal did not incorporate the terms of the settlement agreement or explicitly retain jurisdiction over the settlement. As such, if the order of dismissal is left untouched, the Court would need an independent basis for subject matter jurisdiction to enter an Order enforcing the settlement agreement.[1] Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 378, 381-82 (1994). However, Local Rule 41.1(b) allows for an order of dismissal to be vacated, modified, or stricken from the record for cause shown within 90 days of the entry of such an order. Given the parties' dispute over the terms of their settlement agreement, the Court will vacate the order of dismissal (ECF 19) and retain jurisdiction over this matter until the parties report that the settlement has been concluded.

## III. Procedural History

The Villares filed their complaint on April 21, 2014 (ECF 1), Geico answered and asserted affirmative defenses on June 6, 2014 (ECF 7), and the Villares replied to Geico's affirmative defenses on June 17, 2014 (ECF 8). Settlement conferences facilitated by Magistrate Judge Strawbridge took place on December 18, 2014, February 2, 2015, and February 10, 2015 (ECF 15, 17, 18). The case was dismissed with prejudice under Local Rule 41.1(b) on February 11, 2015 after the parties reported that they had reached a settlement (ECF 19).

Plaintiffs filed the pending Motion to Enforce the Settlement Agreement on March 6, 2015 (ECF 21) and the Court held an off-the-record telephone conference with the parties on

---

[1] Because the parties are diverse and the settlement amount in controversy is greater than $75,000, the Court would have subject matter jurisdiction to enforce the settlement agreement.

March 17, 2015. Defendant filed its Opposition to Plaintiffs' motion on March 19, 2015 (ECF 25) and the Court held a hearing on the motion on March 20, 2015.

**IV.     The Parties' Contentions**

    A.     <u>The Villares' Contentions</u>

Plaintiffs James and Suzanne Villare argue that the material terms of the settlement were (1) Geico would pay $100,000 in exchange for a full and final settlement of all claims, (2) Plaintiffs would execute a Child Support Affidavit, and (3) Plaintiffs would agree to satisfy any and all liens being asserted in this matter with the settlement funds. Pls. Br. at 2 (ECF 21). These settlement terms were memorialized in a February 12, 2015 letter from Geico's counsel. Pls. Ex. A (ECF 21-1).

To consummate the settlement, Geico provided a Release and Trust Agreement for Plaintiffs to sign. Consistent with the settlement terms, the Release and Trust Agreement provided in subparagraph 2(e) that any liens have been settled or satisfied, that Plaintiffs will satisfy such liens in the future, and that Plaintiffs will "defend, indemnify, and forever save harmless" Geico from any such liens that have been or may be asserted, including Medicare liens. Pls. Ex. B at 2 (ECF 21-1). However, the next subparagraph, 2(f), requested that Plaintiffs represent that they have not received Medicare or Social Security benefits related to the accident, and that they will not be Medicare-eligible within 30 months. <u>Id.</u> at 2-3. The final sentence regarding Medicare eligibility within 30 months was problematic because Mr. Villare is 64 and will be Medicare eligible when he turns 65.

To remedy this problem, Plaintiffs signed and notarized a version of the Release and Trust Agreement that omits the final sentence from subparagraph 2(f) about not becoming Medicare-eligible within 30 months. Pls. Br. at 4; Pls. Ex. E (ECF 21-1). The signed version

3

otherwise includes all of the representations and indemnification provisions that Geico requested. Id. Plaintiffs argue that this signed agreement fulfills their settlement obligations. Pls. Br. at 4.

Geico, however, insisted that the Villares provide evidence that there are no outstanding Medicare liens in the form of a final letter from Medicare. Pls. Br. at 3-5; Pls. Ex. C (ECF 21-1). In response, the Villares took additional steps to show that there are no Medicare liens. A legal assistant for Plaintiffs' counsel contacted Medicare to inquire about Mr. Villare's Medicare status and submitted an affidavit stating that Mr. Villare is not currently Medicare eligible, has no open Medicare claims, has no Medicare number, and that a Medicare representative stated that Medicare cannot provide a letter about his claim status because he is not Medicare eligible and is not registered with Medicare. Id. at 5; Pls. Ex. F (ECF 21-1). Mr. Villare also provided an affidavit attesting that he does not currently meet any of the requirements to be eligible for Medicare and has not submitted any claims to Medicare. Pls. Ex. G (ECF 21-1).

Plaintiffs argue that they have complied with their obligations under the settlement agreement and have made a good faith effort to comply with Geico's additional requests regarding Medicare liens. They request the Court either to order Geico's counsel to deliver the settlement funds to them[2] or to set the case for trial.

B.     Geico's Contentions

Geico does not dispute the basic facts but argues that Plaintiffs have not yet satisfied the settlement agreement because they have not provided proof of satisfaction of any Medicare liens in the form of a letter from Medicare. Geico argues that it did not learn that Mr. Villare was

---

[2] Geico has transferred the funds to its counsel, Pls. Ex. H (ECF 21-1), a fact confirmed by Geico's counsel at the hearing held on March 20, 2015.

within 30 months of becoming eligible for Medicare until about February 20, 2015.[3] Def. Br. (ECF 25 at 6). It further contends that Medicare has a 30-month "look back period" "which Medicare may review in determining the issuance of liens."[4] Id. (ECF 25 at 10). Additionally, Geico points to Medicare regulations that specify that a beneficiary must reimburse Medicare if he is covered by liability insurance and receives a liability insurance payment for medical services that Medicare covered. 14 C.F.R. § 411.24(h). Moreover, if the beneficiary fails to do so, the insurance company must reimburse Medicare, even if it has already reimbursed the beneficiary for the same claim. Id. § 411.24(i)(1).

Geico argues that Mr. Villare has represented during settlement negotiations that he will need future medical care as a result of the accident totaling $91,375 to $199,950 over the rest of his life. Def. Br. (ECF 25 at 10-11). To the extent that such costs are covered by Medicare, Geico argues that Medicare could seek repayment from the Villares and/or from Geico under 14 C.F.R. § 411.24 and the look back policy. Geico also argues that the defense and indemnification language in the Release and Trust Agreement is insufficient because if Medicare is unable to collect a lien from the Plaintiffs, it is unlikely Geico would be able to enforce the defense and indemnification provisions. Def. Br. (ECF 25 at 11).

Geico argues that it has offered two ways to resolve this dispute. First, it could place the settlement funds in escrow until Plaintiffs obtain a letter from Medicare attesting to the lack of a Medicare lien. Second, it has proposed that Plaintiffs and their counsel sign a separate Medicare Hold Harmless agreement, in which both Plaintiffs and their counsel would agree to indemnify

---

[3] The Villares counter that Geico had access to Mr. Villare's medical records which clearly specify his birth date and age, and so Mr. Villare's age could not have been a surprise. Pls. Br. at 4 (ECF 21).

[4] Geico does not cite the source of the alleged look back period but, for purposes of this deciding this motion, the Court assumes that Geico is correct about the look back period.

Geico. Def. Br. (ECF 25 at 12); Def. Ex. D (ECF 25-4). Geico contends that the settlement agreement is a valid and binding contract, so this case should not be listed for trial and instead one of the two options Geico has suggested should be pursued.

## V.     Discussion

The parties both agree that a final and binding settlement was reached in this case and that the material terms included the Plaintiffs' agreement "to satisfy any and all liens being asserted in this matter with these settlement funds." Pls. Ex. A (ECF 21-1); Def. Ex. A (ECF 25-1). The only dispute is whether Plaintiffs have complied with that requirement.

At the hearing on March 20, 2015, counsel for both parties agreed that the only known, outstanding lien is a lien from Aetna and that the Villares have agreed to pay the Aetna lien with the proceeds from the settlement. Both counsel also agreed that there was no explicit discussion of Medicare liens or the Medicare look back period during the negotiations that resulted in the settlement agreement. And there is no dispute that the Villares have signed, notarized, and delivered to Geico's counsel a version of Geico's Release and Trust Agreement that includes all of the provisions requested by Geico except for one sentence that inaccurately represents that the Villares will not become Medicare-eligible within 30 months. Pls. Ex. E (ECF 21-1); Def. Ex. C (ECF 25-3). Notably, the version signed by the Villares explicitly obligates them to "defend, indemnify, and forever save harmless" Geico "from and against any and all liens" arising out of the incident that is the subject of this litigation, "including, without limitation, any Medicare or Medicaid liens." Pls. Ex. E ¶ 2(e) (ECF 21-1); Def. Ex. C ¶ 2(e) (ECF 25-3). Furthermore, Plaintiffs have put forward uncontroverted evidence in the form of affidavits showing that Mr. Villare is not currently Medicare eligible and, to date, is not the subject of any Medicare liens. Pls. Exs. F & G (ECF 21-1).

Under these circumstances, the Court concludes that Plaintiffs have fulfilled their obligations under the settlement agreement and are entitled to the $100,000 payment for which they bargained. The settlement agreement did not include any specific terms regarding Medicare liens and, in any event, the Villares have signed a release and indemnification agreement that explicitly covers Medicare liens. If Geico wished to make settlement contingent upon a letter from Medicare attesting that there are no current Medicare liens and/or that there will not be any future Medicare liens, it could have done so during the settlement negotiations, but did not.[5]

## VI. Conclusion

For the foregoing reasons, Plaintiffs Motion to Enforce the Settlement Agreement (ECF 21) will be granted. An appropriate order follows.

O:\CIVIL 14\14-2288 villare v. geico\14cv2288.MemoReMotionToEnforceSettlement.2015.03.23.docx

---

[5] It is not entirely clear whether Geico is concerned about Medicare liens that are currently outstanding or about possible Medicare liens that may arise in the future. Defendant's counsel's March 2, 2015 letter raising this issue requests proof that there "are no outstanding liens from Medicare," implying the concern is with current, outstanding liens. Pls. Ex. C (ECF 21-1). However, Geico's brief seems more concerned with possible future liens that might be asserted if Mr. Villare receives medical treatment at some point in the future. Def. Br. (ECF 25 at 10) (stating that "should Medicare issue a lien" or "should Mr. Villare seek treatment for these injuries," Medicare could seek to recover from Geico). To the extent that Geico seeks confirmation that there are no current Medicare liens outstanding against Mr. Villare, the affidavits of Mr. Villare and his counsel's legal assistant sufficiently establish that fact and the signed Release and Trust Agreement sufficiently protects Geico's interests. Pls. Exs. F & G (ECF 21-1). If Geico seeks certainty that Medicare will never assert a lien, the Court is doubtful that Medicare could or would provide such a guarantee with regard to unknown, hypothetical costs for future medical care that may or may not occur.